UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| A.B., by her next friend JANET BRISTOW,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THOMAS GRIFFIN, NATE ZITTERGRUEN, RANDY KLEIN; RYAN WOODS, CHRIS BILLINGS, AND THE JOHNSTON COMMUNITY SCHOOL DISTRICT;<br><br>　　　　Defendants. | Civ. No. 4:23-CV-00049<br><br>**COMPLAINT**<br>**(Jury Trial Demanded)** |

## INTRODUCTION

1.　Fifty-four years ago, in *Tinker v. Des Moines Independent Community School District*, the Supreme Court declared that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." That landmark decision, interpreted and applied in courts for over half a century, has stood as a bulwark against teachers and administrators who want to silence students' opinions that are inconsistent with their own. Unless a student's speech causes a substantial disruption, promotes illegal conduct, or is lewd, indecent, or vulgar, it is constitutionally protected.

2. On September 1, 2022, two days after her high-school government class discussed students' free speech rights, Plaintiff A.B. wore this t-shirt to school:



3. For wearing this shirt, which quotes the Second Amendment of the United States Constitution and is so clearly making a political statement, A.B.'s government teacher, Tom Griffin, removed her from class and the school suspended her. Those actions violate the First and Fourteenth Amendments of the United States Constitution.

4. Plaintiff A.B., by her next friend Janet Bristow, brings this action under 42 U.S.C. § 1983 for damages and declaratory and injunctive relief.

## PARTIES

5. Plaintiff A.B. is a minor, who appears by her next friend Janet Bristow, A.B.'s mother and natural guardian.

6. A.B. is a resident of Polk County, Iowa, and a student at Johnston High School.

7. Defendant Johnston Community School District is the public school district for Johnston, Iowa. Johnston High School is part of the Johnston Community School District.

8. Defendant Thomas Griffin is a government teacher at Johnston High School; he is a resident of Polk County, Iowa.

9. Defendant Nate Zittergruen is the Human Resources Director at Johnston Community School District. He was promoted to that role in January 2023. During all times relevant to this lawsuit, Zittergruen was an associate principal of Johnston High School. Zittergruen is a resident of Polk County, Iowa.

10. Defendant Randy Klein is an associate principal of Johnston High School; he is a resident of Polk County, Iowa.

11. Defendant Ryan Woods is the principal of Johnston High School; he is a resident of Polk County, Iowa.

12. Chris Billings is the executive director of school leadership at Johnston Community School District; he is a resident of Polk County, Iowa.

## JURISDICTION AND VENUE

13. This action arises under the First and Fourteenth Amendments to the United States Constitution and is brought under 42 U.S.C. §§1983 and 1988.

14. The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

15. Venue is proper under 28 U.S.C. §1391 because defendants reside here and all or a substantial part of the events or omissions giving rise to the claims occurred here.

## FACTUAL ALLEGATIONS

16. Thomas Griffin is not the ordinary teacher when it comes to knowing and understanding students' rights to free speech under the U.S. Constitution.

17. In addition to his teaching position at Johnston High School, Griffin is an adjunct instructor at William Penn University and Nebraska Methodist College, where he teaches government and history.

18. In 2013, the James Madison Memorial Fellowship Foundation named Griffin a James Madison Fellow, which is "America's most prestigious award in constitutional history and government for secondary teachers." As part of the fellowship, Griffin received tuition assistance for courses to receive his master's degree.

19. "The goal of the James Madison Fellowship," according to the Foundation's website, "is to help secondary level history, government, and civics teachers to become outstanding educators of the U.S. Constitution."

20. As part of his effort to become an outstanding educator of the U.S. Constitution, Griffin has written about students' free speech rights under the First and Fourteenth Amendment. *See* Thomas Griffin, *Teacher Talk: Free speech, the Founders…and*

*TWITTER???*, BILL OF RIGHTS INSTITUTE, Feb. 8, 2022. https://billofrightsinstitute.org/blog/tacher-talk-free-speech-the-founders-and-twitter.

21. Griffin is also active with the Bill of Rights Institute, an organization that, according to its website, "teaches civics" and "equip[s] students and teachers to live the ideas of a free and just society."

22. Among other things, the Bill of Rights Institute produces extensive student materials on the Supreme Court's decision in *Tinker v. Des Moines Independent Community School District*, some of which Griffin uses in his classroom.

23. In September 2022, Griffin was named to the Bill of Rights Institute Teacher Council. When he was appointed to the council, Griffin said that his "proudest moments as a teacher of the last thirteen years have come while 'working with students who have been implementing projects designed for civic engagement in which they took action in an effort to address problems that were important to them."

24. That was not the case on September 1, 2022.

25. Tw days before, Griffin had a discussion with his senior government class about their free speech rights, or lack thereof, while they were on school grounds. Griffin told his students that, although they had some right to free speech, that right was "extremely limited" when the students stepped on school property. Griffin told his students that their teacher (in this case, him) would decide what was acceptable speech in the classroom. And with respect to clothing—which was at the very core of the *Tinker* case—Griffin told his students that he would not allow students to wear any clothing that depicts guns, alcohol, or any other "inappropriate material."

26. A.B. knew that Griffin was wrong about the scope of the First Amendment, so the next time she had Griffin's government class, September 1, 2022, she wore a shirt to school that said "What part of 'shall not be infringed' do you not understand?" with a depiction of a rifle underneath it. (A photo of the shirt is included in paragraph 2 above.)

27. A.B. had worn the shirt to school before, with no complaints from students, teachers, or administrators. And A.B.'s brother, who graduated from Johnston High School in 2019, had worn the same shirt to school multiple times with no complaints.

28. Griffin, who teaches the Bill of Rights, knew that shirt was quoting the Second Amendment of the U.S. Constitution, and he knew it was a commentary on gun control efforts. Nevertheless, he claimed that the shirt violated the school's dress code and he removed A.B. from the classroom, sending her to the school administration office.

29. A.B. told Griffin she had a right to wear the shirt, which was not causing any disruption in the class—other than any disruption Griffin himself created by removing A.B. from the classroom. But Griffin said she was wrong about the First Amendment and that the administration would back him up.

30. A.B. called her mother, Janet Bristow, who came to the school where she and A.B. spoke with Associate Principal Zittergruen, Associate Principal Klein, and, eventually, Principal Woods.

31. Bristow and A.B. explained to Zittergruen, Klein, and Woods that A.B.'s shirt was quoting the Second Amendment to the U.S. Constitution, a point they should have already understand and one that that Griffin, a government teacher, well understood.

32.     But Zittergruen claimed that A.B. could not wear the shirt in school because an image of a gun could be perceived to be threatening. When Bristow asked if any student felt threatened or was offended by the shirt's message, Zittergruen told A.B. and Bristow that "we don't get to choose how our words or actions make people feel."

33.     But no students expressed that they felt threatened or offended by the shirt's message or the mere image of a rifle on the shirt; the only person whose sensibilities were offended by the message was Griffin.

34.     In any event, *Tinker* teaches that in order for a school "to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." *Tinker*, 393 U.S. at 509. "[U]ndifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." *Id.* at 508.

35.     Nevertheless, the school administrators would not let A.B. return to class unless she changed her shirt. A.B. refused, so the school administrators suspended her.

36.     According to Chris Billings, the Executive Director of School Leadership, he advised the school administrators that A.B.'s shirt violated the school's dress code.

37.     That same day, Klein sent Bristow a letter documenting the out-of-school suspension and stating that the reason was based on "dress code."

38.     After the meeting with the school administrators, Bristow emailed the school board members, explaining what had happened.

39. That evening, Johnston Community School District Superintendent Laura Kacer called Bristow to apologize.

40. Shortly after Kacer's phone call, Billings emailed A.B. to apologize. He stated that he "now recognize[s] that this is considered political speech."

41. Bristow asked the school officials that Griffin also apologize to A.B. and address the students in his class, (the students knew A.B. had been removed from the classroom because of her shirt) and inform them that he was wrong in claiming that A.B.'s shirt was not protected speech.

42. Without addressing the class, Griffin left the impression with his students that A.B. was wrong and that her opinions were not welcome in the classroom.

43. To date, Griffin has refused to apologize to A.B. or to address the class to correct his wrongful removal of A.B. from the classroom.

44. The out-of-school suspension still appears on A.B.'s online school record.

## COUNT I
### Violation of the First Amendment

45. Plaintiffs reallege and incorporate by reference all allegations in the Complaint.

46. By suspending A.B. based upon her clothing—which did not materially and substantially disrupt the work and discipline of the school or invade the rights of others, did not promote illegal conduct, and was not lewd, indecent, or vulgar—Defendants violated A.B.'s freedom of speech, guaranteed by the First Amendment of the U.S. Constitution.

47. A.B.'s shirt, quoting the Second Amendment and worn in response to Griffin's discussion the previous day on the scope of the First Amendment in the classroom, clearly

8

falls within the bounds of protected student speech as articulated by *Tinker* and later Supreme Court decisions.

## PRAYER FOR RELIEF

THEREFORE, Plaintiffs request that this Court grant the following relief:

1. A declaration that wearing clothing depicting a firearm in a non-threatening, non-violent manner is protected under the First Amendment.

2. A permeant injunction prohibiting Defendants from restricting students from wearing clothing at school that depicts firearms in a non-violent, non-threatening manner.

3. Compensatory, nominal, and punitive damages.

4. Attorney's fees and costs for bringing and maintaining this action, under 42 U.S.C. § 1988.

5. Costs under Federal Rule of Civil Procedure 54 and any other applicable authority; and

6. Any other and further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable under Federal Rule of Civil Procedure 38.

DATED, this 6th day of February 2022.

                                                  /s/ Ryan Koopmans

Ryan G. Koopmans
**KOOPMANS LAW GROUP LLC**
PO Box 93843
Des Moines, IA 50393
(515) 978-1140
ryan@koopmansgroup.com

Alan Ostergren
**ALAN R. OSTEGREN, P.C.**
500 Locust Street
Suite 199
Des Moines, Iowa 50309
(515) 207-0134
alan.ostergren@ostergrenlaw.com

*Counsel for Plaintiffs*